**Allan COKER, Individually and d/b/a Tejas Wrecker Service, Appellant,**

v.

**Erol BURGHARDT, Appellee.**

**No. 05–91–01310–CV.**

Court of Appeals of Texas, Dallas.

June 25, 1992.

Rehearing Denied Aug. 7, 1992.

Bill Yarborough, Bedford, for appellant.

Kern A. Lewis, Fort Worth, for appellee.

Before BAKER, BURNETT and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

Erol Burghardt sued Allan Coker, d/b/a Tejas Wrecker Service, under the DTPA[1] for damaging his car. A jury found for Burghardt. The trial court entered judgment on the verdict. Tejas contends the trial court erred by allowing Burghardt to testify about repair costs. Tejas argues Burghardt's testimony provides no evidence or insufficient evidence of damages. Tejas also contends Burghardt's pleadings do not support a prejudgment interest award and that Burghardt is not a DTPA consumer. We affirm.

## THE TOW AND STORAGE

Burghardt and a friend went to a show one evening near downtown Dallas. They parked in a lot with a self-serve box for its customers to use for paying the parking fee. Burghardt's friend paid the fee, and they went to the show. When they returned to the lot after the show, Burghardt's car was not there. Tejas's telephone number was on a sign at the lot. Burghardt called Tejas and found Tejas had towed his car. Tejas would not answer his questions. Tejas told Burghardt he had to come to its lot to get his car. Burghardt and his friend walked to Tejas's tow lot.

At the lot, Burghardt asked to speak with someone in charge. A Tejas employee said this was not possible. Burghardt called the police. The police told him the dispute was a civil matter outside their jurisdiction. Tejas told Burghardt the fee was $69. The Tejas employee would not take a check or credit card so Burghardt asked to get his bankcard from his car. Tejas permitted Burghardt to go on its lot to his car. While he was unlocking his car, three Tejas employees approached him. They acted in a threatening manner toward him and cursed him.

Fearing for his life, Burghardt locked himself in his car. The three employees stood outside and mocked him. He told the three men he would not get out until they left. The employees left. Burghardt went to a 7–Eleven and got funds from an automatic teller machine. When Burghardt returned to Tejas's lot, the Tejas employee said it would cost him $120 more to get his car. Burghardt pleaded with the employee, and the employee accepted $69. Before Burghardt signed anything, he told the employee he wanted to check the condition of his car. The employee allowed Burghardt to do so. However, before Burghardt went to the lot, the employee told him, "[Y]ou know, boy, you shouldn't have kicked in your car like that." When questioned about his statement, the Tejas employee only chuckled.

Burghardt discovered that his car had a large dent on its right rear quarter-panel the size of a footprint. There was still a dusty footprint on the metal finish of the car. The car was undamaged before the tow. Burghardt called the police. The police arrived and made a report. The police told Burghardt there was nothing they could do because this was a civil matter.

Tejas required complaints against Tejas be in writing and submitted to Tejas's management. Burghardt asked to borrow

---

1. *See* Tex.Bus. & Com.Code Ann. §§ 17.41–17.826, known as the *Deceptive Trade Practices–Consumer Protection Act.* All statutory references to the DTPA are to the Business and Commerce Code.

a pen and paper. Tejas's employee refused this request. The employee cursed Burghardt and gave him a receipt. The $69 bill encompassed a $42 towing fee, a $15 storage fee, and a $10 preservation fee.

Burghardt testified a sign at Tejas's tow lot explained the purpose of the preservation fee. It covered the cost of protecting a car from vandalism and other damage while in Tejas's possession. The next day Burghardt went to Tejas's lot and submitted a claim for the damage to his car. Coker acknowledged Tejas's obligation to protect the cars it towed from vandalism.

## REASONABLE REPAIR COSTS

In its first point of error, Tejas contends the trial court erred in allowing Burghardt to testify about the cost of repairing his car. Tejas argues Burghardt did not qualify as an expert. In its second point of error, Tejas contends the trial court erred by not granting an instructed verdict and judgment for Tejas. Tejas argues there was no evidence and insufficient evidence on damages to support the judgment.

### A.   Admission of Evidence

The trial court decides whether evidence is admissible. *See Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied); TEX.R.CIV. EVID. 104(a). Questions about the admission of evidence lie within the trial court's discretion. *Syndex Corp. v. Dean,* 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied). Review of a trial court's action under an abuse of discretion standard is a question of law. *Jackson v. Van Winkle,* 660 S.W.2d 807, 810 (Tex.1983); *Syndex Corp.,* 820 S.W.2d at 873. We do not disturb the trial court's decision about admitting opinion evidence unless there is a showing of abuse of discretion. *UMC, Inc. v. Coonrod Elec. Co.,* 667 S.W.2d 549, 559 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

### B.   Applicable Law

A lay witness can give his opinion on the amount of damages as long as he testifies about matters within his knowledge. *See Fidelity & Casualty Co. v. Underwood,* 791 S.W.2d 635, 642 (Tex.App.—Dallas 1990, no writ). A witness who familiarizes himself with the reasonable car repair costs in a given county can give his opinion about what those costs might be. *International Serv. Ins. Co. v. Hanna,* 515 S.W.2d 175, 176 (Tex.Civ.App.—Eastland 1974, no writ); *compare Allright, Inc. v. Lowe,* 500 S.W.2d 190, 191–92 (Tex.Civ. App.—Houston [14th Dist.] 1973, no writ). The issue is whether the party testifying about the cost of car repairs *knew* what a reasonable charge was. *McMahan v. Musgrave,* 229 S.W.2d 894, 898 (Tex.Civ.App.—Eastland 1950, writ dism'd).

The party attacking the witness's qualifications must examine the witness and test the basis of his knowledge about the repair costs. *McMahan,* 229 S.W.2d at 898. This procedure allows the reviewing court to determine whether the trial court abused its discretion by improperly admitting opinion evidence. This procedure also gives the trial court the opportunity to rectify a potentially erroneous ruling about admitting the evidence.

The Texas Rules of Civil Evidence apply to lay witness opinion testimony. Rule 701 allows lay witness opinions if the witness bases his opinion on the witness's perception and if his opinion helps in determining a fact in issue.[2] The Fort Worth court has resolved similar issues using rule 701. *See Laprade v. Laprade,* 784 S.W.2d 490, 492–93 (Tex.App.—Fort Worth 1990, writ denied); *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271 (Tex. App.—Fort Worth 1985, no writ).

In *Laprade,* a lay witness testified about the value of a business. That court held it is within the trial court's discretion to ad-

---

**2.** Rule 701 provides:
> *If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.*

See TEX.R.CIV.EVID. 701 (emphasis added).

mit lay opinion about value if the witness has personal knowledge of facts forming the opinion and a rational connection exists between the opinion and the facts—and if the opinion is helpful. *Laprade,* 784 S.W.2d at 492. The *Burnett* court held the trial court did not abuse its discretion by admitting lay testimony about the market value of a rent house. The court concluded the testimony was helpful in determining a fact in issue. The witness in *Burnett* based his opinion on his familiarity with rent houses. *Burnett,* 698 S.W.2d at 276.

## C. No Evidence

■ No evidence points are questions of law. *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984). In reviewing a no evidence point, we consider only the evidence and inferences that support the jury's findings. We disregard all evidence and inferences that do not support the jury's findings. *Jacobs v. Danny Darby Real Estate,* 750 S.W.2d 174, 175–76 (Tex.1988).

## D. Insufficient Evidence

■ In reviewing an insufficient evidence point, we view all of the evidence in the record including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the evidence standing alone is too weak to support the jury's findings or if the jury's answers are so against the overwhelming weight of the evidence that they are manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The jury is the trier of fact and decides the fact issues by a preponderance of the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

3. Tejas relies on two cases to support its contention that Burghardt was not qualified to testify about the cost of repairing his car. *See South-western Bell Tel. Co. v. Wilson,* 768 S.W.2d 755, 762 (Tex.App.—Corpus Christi 1988, writ denied); *Uvalde County v. Barrier,* 710 S.W.2d 740, 744 (Tex.App.—San Antonio 1986, no writ). *Wilson* involved a property valuation based upon a single unaccepted purchase offer. The

## E. Application of Law to Facts

### 1. *Burghardt's Testimony*

Burghardt said he had been driving eight years and owned five cars. He said he went to repair shops to find out what it would take to repair his car to its original condition. Burghardt said it would take about $1200 to repair his car to the condition it was in before Tejas damaged it.

Tejas objected that any testimony about damages would be hearsay and that Burghardt did not qualify as an expert on car repair. However, Tejas did not take Burghardt on voir dire to show there was no rational basis for his opinions. The court overruled the objection.

### 2. *Admission of Burghardt's Testimony*

■ Burghardt testified he went to various car repair shops to determine the cost to repair his car to its original condition. He familiarized himself with the repair costs. He then gave his opinion about what those costs might be. Lay witness opinion may be based on hearsay. *Cortez v. Mascarro,* 412 S.W.2d 342, 343–44 (Tex. Civ.App.—San Antonio 1967, no writ); *see also Hanna,* 515 S.W.2d at 176. The issue was whether Burghardt knew $1200 was a reasonable price for repairing his dented quarter-panel.[3] *McMahan,* 229 S.W.2d at 898. Burghardt's testimony was helpful in determining a fact in issue—the damage caused by Tejas. *See Burnett,* 698 S.W.2d at 276; Tex.R.Civ.Evid. 701(b). He said he owned many cars and had gone to repair shops to find out what the repair costs would be. Tejas did not attack this witness's qualifications to determine whether Burghardt based the $1200 estimate on facts within his personal knowledge. *See McMahan,* 229 S.W.2d at 898. Based upon the record, we cannot say the trial court abused its discretion by admitting

*Wilson* plaintiff did not express his opinion of the value of his property. *Barrier* involved a property valuation of wrongfully removed dirt. The *Barrier* plaintiff based his testimony on the opinion of a homebuilder who did land fill and excavation work. Neither case involved the plaintiff's opinion about the damages to his property. They are not on point.

Burghardt's testimony. *See UMC, Inc.,* 667 S.W.2d at 559. We overrule Tejas's first point of error.[4]

### 3. *No Evidence—Insufficient Evidence*

■ We first review the evidence that supports the jury finding. Burghardt testified it would cost about $1200 to repair his car. The jury awarded Burghardt $1257.93. We only consider Burghardt's testimony. We find there is evidence to support the jury's damage award. *See Jacobs,* 750 S.W.2d at 175–76.

We now review the evidence that is contrary to the jury finding. Tejas did not cross-examine Burghardt to determine the basis of his opinion or introduce any controverting evidence showing the cost to repair the car. Tejas did not controvert Burghardt's testimony about repair costs. The evidence is sufficient to support the jury's damage award. *See Plas-Tex, Inc.,* 772 S.W.2d at 445. We overrule Tejas's second point of error.

### PREJUDGMENT INTEREST

■ In its third point of error, Tejas contends the trial court erred in awarding prejudgment interest. Tejas argues Burghardt's pleadings do not support this award. Burghardt did not have a separate paragraph pleading for prejudgment interest but did include a request for prejudgment interest in his prayer. Tejas contends that to recover prejudgment interest, a party must plead for the interest in a separate paragraph. We disagree.

A prayer for interest, without more, is sufficient to support an award of prejudgment interest. *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 96 (Tex.1976), *overruled on other grounds, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Benjamin Franklin Sav. Ass'n v. Kotrla,* 751 S.W.2d 218, 224 (Tex.App.—Houston [14th Dist.] 1988, no writ). The trial court properly awarded

prejudgment interest to Burghardt. We overrule Tejas's third point of error.

### IS BURGHARDT A DTPA CONSUMER?

In its fourth point of error, Tejas contends the trial court erred in awarding damages to Burghardt under the DTPA. Tejas claims there was no evidence supporting Burghardt's consumer status and no evidence showing damages. Because there was sufficient evidence establishing damages, we need not revisit that issue.

### A. Applicable Law

■ Consumer status is a question of law the trial court decides based upon all the evidence. *Security Bank v. Dalton,* 803 S.W.2d 443, 451 (Tex.App.—Fort Worth 1991, writ denied). A party must meet two requirements to be a consumer. First, the party must have sought or acquired goods or services by purchase or lease. Second, the goods or services purchased or leased must form the basis of the DTPA complaint. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981). However, a party need not voluntarily acquire goods or services by purchase or lease to qualify as a DTPA consumer. *See Allied Towing Serv. v. Mitchell,* 833 S.W.2d 577, 581 (Tex.App.—Dallas 1992, n.w.h); *Nelson v. Schanzer,* 788 S.W.2d 81, 86–87 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

### B. Application of Law to Fact

■ Burghardt involuntarily acquired Tejas's services. He purchased these services by paying Tejas $69. These services included $42 for towing his car, $15 for storing it, and $10 for preserving it. Tejas's services form the basis of the complaint. A party need not voluntarily acquire services to qualify as a DTPA consumer. *See Allied Towing,* 833 S.W.2d at 581; *Nelson,* 788 S.W.2d at 86–87. The

---

4. Burghardt contends the DTPA does not require that he show the car repair costs were reasonable. *See Jacobs,* 750 S.W.2d at 176–77 (Kilgarlin, J., concurring). However, we need not consider this contention. The jury question

on damages asks the jury what sum of money would reasonably compensate Burghardt for the damage to his car and instructed that it could consider reasonable restoration costs.

jury determined Tejas engaged in conduct proscribed by section 17.50(a)(1). The trial court properly decided Burghardt was a consumer. We overrule Tejas's fourth point of error.

We affirm the trial court's judgment.