Dawnette NARDINI, Appellant,

v.

CONTINENTAL AIRLINES, INC., Appellee.

No. 14–00–00210–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 2001.

Rehearing Overruled Nov. 15, 2001.

---

**39.** *See* Tex. Penal Code Ann. § 12.32 (Vernon 1994).

**40.** *See id.* §§ 12.33, 19.02(d) (Vernon 1994).

**41.** *See Perez,* 940 S.W.2d at 823–24.

William R. Edwards, Corpus Christi, for appellants.

Robin E. Curtis, Patrick M. Flynn, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and Senior Chief Justice MURPHY.*

## OPINION

PAUL C. MURPHY, Senior Chief Justice (Assigned).

This is an appeal from a summary judgment in favor of appellee, Continental Airlines, Inc. ("Continental"), on a suit alleging sexual harassment by one of its employees. In three issues for review, appellant, Dawnette Nardini, challenges the judgment of the trial court. We affirm.

## Background

On October 4, 1997, Dawnette Nardini, a flight attendant for Continental, landed in McAllen, Texas, as part of a three-day pairing which included Captain Clark Nielsen, First Officer Todd Welsh, and flight attendants Natasha Krauss and Carolina Martinez.[1] After landing, the crew took a shuttle to a local hotel and checked into their rooms. The flight attendants and Welsh then departed for a restaurant where the entire group drank varying amounts of alcohol. Around 11:30 p.m., the group returned to the hotel, with Nardini and Martinez accompanying Welsh to his room for continued conversation. At approximately 1:45 a.m., Martinez decided to retire for the evening, with Welsh accompanying Martinez to the door of her room. As Welsh returned to his room, he saw Nardini attempting to open her door and asked if she wanted to continue talking in his room. Nardini agreed and followed Welsh inside his room.

Once inside, Welsh locked the door, allegedly pushed Nardini to the bed, and, after removing her panties and bra, began kissing her breasts. A short time later, Nardini fled the room and discussed the incident with Martinez who, in turn, informed Captain Nielsen. Additionally, the hotel staff notified the McAllen police department; however, Nardini decided not to file a formal complaint about the incident with the dispatched police officer, characterizing it as a misunderstanding among co-workers. Upon return to Houston,

---

* Senior Chief Justice Murphy sitting by assignment.

1. The term "pairing" refers to the grouping of a crew, including pilots and flight attendants, for a given aircraft over a designated period of time.

Nardini notified her supervisor, Sabrina Clark, of the incident. Continental responded by conducting an investigation of Nardini's complaint and, based upon the police report and interviews, sanctioned Welsh for exercising poor judgment in the incident. Not satisfied that her employer took sufficient action against Welsh, Nardini subsequently filed an employee discrimination suit, alleging that Continental maintained a hostile work environment. Continental then filed both a no-evidence and "traditional" motion for summary judgment. Following the trial court's grant of summary judgment in favor of Continental, Nardini now appeals.

## Standard of Review

A defendant moving for "traditional" summary judgment has the burden of establishing that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action and that the defendant is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on the targeted element of the plaintiff's cause of action. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon*, 690 S.W.2d at 549. A reviewing court also indulges all inferences in favor of the non-movant, and likewise resolves all doubts in his favor. *Id.* Where the trial court does not state the grounds for granting the motion, and several grounds are provided, the reviewing court must affirm the summary judgment if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). Finally, because the propriety of summary judgment is a

question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994).

As distinguished from a traditional summary judgment, we review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *Specialty Retailers, Inc., v. Fuqua*, 29 S.W.3d 140, 146 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). Here, a reviewing court views all evidence in a light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Id.; Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is properly granted if the respondent fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the respondent's case. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269; Tex.R. Civ. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

## Hostile Work Environment Claim

In the case before us, the trial court entered summary judgment for Continental without specifying which motion it granted or the grounds it relied on. Accordingly, we will review both Continental's traditional and no-evidence motions, and all accompanying summary judgment proof, for any valid theory justifying the

trial court's action. *Rogers,* 772 S.W.2d at 79. One of the grounds raised in Continental's motion for summary judgment is its contention that the alleged harassment of Nardini occurred outside the workplace. Because Nardini failed to demonstrate any harassment occurred in the workplace, Continental argues, she did not make the threshold showing necessary to establish a hostile work environment claim under Texas law. For the reasons provided below, we agree.

■■■ Under the Texas Commission on Human Rights Act ("TCHRA"), it is unlawful for an employer to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. TEX.LABOR CODE ANN. § 21.051 (Vernon 1996). The TCHRA is modeled on federal law for the purpose of executing the policies embodied in Title VII of the Federal Civil Rights Act of 1964. *Id.* § 21.001. One form of employment discrimination actionable under Title VII is sexual harassment, which is generally divided into two categories: quid pro quo harassment and hostile work environment harassment. *Ewald v. Wornick Family Foods Corp.,* 878 S.W.2d 653, 658 (Tex. App.—Corpus Christi 1994, writ denied); *Syndex Corp. v. Dean,* 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied). Hostile work environment discrimination, *i.e.,* the type complained of by Nardini, requires a plaintiff to make a prima facie showing of the following elements: (1) the plaintiff belongs to a protected group, (2) the plaintiff was subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex, (4) the harassment complained of affected a "term, condition, or privilege" of employment, and (5) the employer knew or should have known of the harassment and

failed to take remedial action. *Ewald,* 878 S.W.2d at 659 (citing *Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir. 1982)).

■■■ Federal caselaw interpreting hostile work environment actions under Title VII recognizes that, for purposes of summary judgment, a court may not exclude from consideration those allegations of sexual conduct which occurred after work hours. *Haehn v. City of Hoisington,* 702 F.Supp. 1526, 1529 (D.Kan.1991). Rather, a court must ask whether sufficient facts exist from which to infer a nexus between the sexual conduct and the work environment. *Id.; P. v. Delta Air Lines, Inc.,* 102 F.Supp.2d 132, 137 (E.D.N.Y.2000). Citing an unpublished federal decision, *Huitt v. Market St. Corp.,* Nardini argues that a sufficient nexus exists to connect Welsh's conduct at the hotel with her duties at Continental. 1993 WL 245744 (D.Kan. June 10, 1993); 62 Fair Empl. Prac. Cas. (BNA) (No. 91–1488 MLB) 538. Finding the facts of *Huitt* distinguishable from those in the present case, however, we disagree.

In *Huitt,* the plaintiff was working an evening shift as bartender in a hotel when a friend stopped by the workplace to determine if she needed a ride home. *Id.* at *1. The hotel supervisor discovered this visit and promptly instructed plaintiff that visitors were not allowed and that her friend must leave. *Id.* Because compliance with his order required plaintiff to forgo a ride home, however, the supervisor agreed to provide her with transportation. *Id.* at *1–2. Later, as the supervisor was driving plaintiff to her home, he stopped at a park and allegedly raped her. *Id.* at *2. Plaintiff subsequently filed a hostile work environment suit based on this allegation, with the employer seeking summary judgment on grounds that any actionable harassment under Title VII need occur at the work-

place. *Id.* at \*4. The court denied the employer's motion for summary judgment, reasoning that plaintiff's proof showed the supervisor placed himself in a position to drive plaintiff home by using his authority to make it more difficult for her to obtain other transportation. *Id.*

In the instant case, the facts differ in at least two material respects. First, Welsh was not Nardini's supervisor and thus exercised no authority over her. *See Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir.1984) (finding that pilot employed by defendant airline was not flight attendant's supervisor for purposes of attendant's hostile workplace environment suit). As in the *Swentek* case, Continental delegates responsibility to its pilots for safety of passengers and crew members on the aircraft; however, Nardini does not allege harassment perpetrated in the exercise of that responsibility. *See id.* Also similar to *Swentek* is the fact that Welsh had very limited authority over Nardini as Continental's pilots and flight attendants belong to different administrative departments, perform under different supervisory chains of command, and do not hire, fire, promote or demote attendants nor determine their work assignments. *See id.* Second, Nardini, unlike the plaintiff in *Huitt,* was not placed in the difficult position of engaging in after-hours association with a company employee. In fact, during her deposition testimony, Nardini admits she voluntarily returned to Welsh's room in hopes of abating tensions resulting from an earlier conversation with him.

A case more closely analogous to Nardini's, however, is *P. v. Delta Air Lines, Inc.* 102 F.Supp.2d 132 (E.D.N.Y.2000). In *Delta,* a flight crew landed in Rome on the first leg of a round-trip to New York. *Id.* at 135. As the crew took a bus to their hotel accommodations, the plaintiff, a female flight attendant, accepted an invitation to join a male flight attendant in his room for a glass of wine. *Id.* Once plaintiff arrived at the male attendant's room, he gave her a glass of wine spiked with a sedative and raped her. *Id.* Following plaintiff's Title VII action against Delta for a hostile work environment, the court found that the male attendant's hotel room did not constitute a work-related environment and granted summary judgment for the employer. *Id.* at 141. In reaching this decision, the court reasoned that plaintiff was not only off-duty during the incident, but that she voluntarily associated herself with the male attendant, a non-supervisory employee, for purely personal reasons. *Id.* Because Nardini's association with Welsh, a non-supervisory employee, was also voluntary, purely personal, conducted in a hotel during a layover, and while off-duty, we find this case persuasive regarding Nardini's hostile work environment claim. Accordingly, we find Continental carried its burden of establishing that no issue of material fact exists regarding the "workplace" requirement under Nardini's hostile work environment action. Therefore, finding that the trial court did not err by entering summary judgment for Continental on the TCHRA claim, we overrule Nardini's first two issues for review.

### Ratification Claim

■ In Nardini's third issue, she asserts that the trial court erred by granting summary judgment on her claim that Continental's response to her alleged assault acted as a ratification of Welsh's conduct. Specifically, she contends that unresolved fact issues remain as to her tort ratification claim.

Nardini filed her First Amended Original Petition on October 19, 1998. Contained in this petition was Nardini's discrimination claim alleging violations of TCHRA as set forth in Texas Labor Code Section 21.051, *et seq.* While both sides

briefed the issue of ratification in their summary judgment motions and responses, Nardini's petition makes no reference to a ratification claim. The court subsequently granted summary judgment for Continental in December, 1999, dismissing all of Nardini's claims.

Under the Texas Rules of Civil Procedure, a court shall render summary judgment if "the pleadings ... on file at the time of the hearing ... show that ... there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on the issues set out in the motion or in an answer or any other response." TEX.R. CIV. P. 166a(c). In Nardini's petition, her only cause of action was the discrimination claim filed under Texas Labor Code Section 21.051. Therefore, it was on this state of the record that the trial court granted Continental's motion for summary judgment. Accordingly, Nardini's contention that a fact issue existed as to her ratification claim is unavailing because the claim was not properly before the court for consideration on summary judgment. *See West Tex. Gas, Inc. v. 297 Gas Co., Inc.* 864 S.W.2d 681, 685 (Tex.App.—Amarillo 1993, no writ). We overrule appellant's third issue and affirm the judgment of the trial court.